IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

T<small>RUDY</small> L. W<small>RIGHT</small>                                                                    P<small>LAINTIFF</small>

vs.                                         C<small>IVIL</small> N<small>O</small>. 04-6155

J<small>O</small> A<small>NNE</small> B. B<small>ARNHART</small>,
C<small>OMMISSIONER</small>, S<small>OCIAL</small> S<small>ECURITY</small> A<small>DMINISTRATION</small>                                    D<small>EFENDANT</small>

## **MEMORANDUM OPINION**

Trudy Wright ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits ("SSI"), under Title XVI of the Act.

**Background:**

The application for SSI now before this court was protectively filed on December 18, 2001,[1] alleging an amended onset date of December 18, 2001, due to obsessive compulsive disorder ("OCD"), limited left arm use, depression, and disc problems. (Tr. 66-68, 98). An administrative hearing was held on August 20, 2003. (Tr. 343-377, 388-389). Plaintiff was present and represented by counsel.

On January 30, 2004, the Administrative Law Judge ("ALJ"), issued a written opinion finding that, although severe, plaintiff's impairments did not meet or equal the criteria of any of the

---

[1] At the hearing, the ALJ acknowledged that plaintiff had previously filed an application for benefits in September 1994. (Tr. 344). However, the claim was denied following an administrative hearing on July 20, 1996, and affirmed by this court on December 30, 1997. The ALJ then concluded that no good cause existed to reopen or revise that decision. As such, he amended her onset date to December 18, 2001, plaintiff's protected filing date. (Tr. 344).

impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 24). At this time, plaintiff was thirty-eight years old and possessed a ninth grade level education. (Tr. 348). The record reveals that she has past relevant work ("PRW"), as a certified nurse's assistant, a delivery person, and a fast food cashier/cook. (Tr. 12).

After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ( "RFC"), to perform a broad range of medium work, consisting of the ability to occasionally lift up to fifty pounds; frequently lift and carry objects up to twenty-five pounds; sit with normal breaks for a total of six hours during an eight-hour workday; and, stand and walk for six hours per day with normal breaks. (Tr. 22). He also determined that plaintiff would have to avoid safety hazards such as unprotected heights and moving machinery. From a mental perspective, the ALJ found that she could perform work where the interpersonal contact was incidental to the work performed, the task was learned and performed by rote with few variables, and the task required little judgment and simple, direct, and concrete judgment. (Tr. 22, 24). With the assistance of a vocational expert, the ALJ then found that plaintiff could still perform work existing in significant numbers in the national economy, to include positions as small parts assembler, hotel cleaner, and hand packager. (Tr. 21).

On September 28, 2001, the Appeals Council declined to review this decision. (Tr. 13-15). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).
2

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

3

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination

4

concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the ALJ found plaintiff capable of performing a range of medium level work. (Tr. 22). However, in so finding, he failed to properly consider the evidence indicating that plaintiff was suffering from a variety of back problems. In pertinent part, the medical evidence reveals the following. On June 20, 2001, plaintiff sought emergency treatment for back pain. (Tr. 115). She indicated that she had been riding a motorcycle the previous day, when it rolled over and struck her in the head. Plaintiff stated that she was knocked unconscious for a brief period of time. Aside from some mild jaw pain and mild paraspinal spasm, her physical examination was normal. X-rays only revealed osteopenic bones in the panorex of the mandible; hypertrophic spurring at the anterior C3-4 and C4-5 levels with paravertebral space narrowing; mild degenerative changes in the thoracic spine; mild disc space narrowing at the L4-5 levels; and, mild degenerative changes in the lumbar spine, greatest at the L3-4 and L4-5 levels . (Tr. 117-118). As such, she was diagnosed with mild muscle spasm, and prescribed Lortab for pain. (Tr. 115).

On January 13, 2002, plaintiff presented at the emergency room complaining of back pain. (Tr. 339). Records indicate that she told the nurse that she "wanted a shot." According to the treatment report, plaintiff's history included a disk herniation at the L-5 level. Further, notes revealed that her disk slipped "in and out of place." Accordingly, plaintiff was diagnosed with exacerbated lower back pain, given an injection of Vicodin, and prescribed Flexeril. (Tr. 339).

5

On June 19, 2002, plaintiff sought treatment for lower back pain. (Tr. 320). Plaintiff was diagnosed with lumbar strain and spasm, and given prescriptions for Skelaxin and Vicoprofen. (Tr. 320).

On March 30, 2003, plaintiff was treated for back pain radiating into her legs. (Tr. 310). An examination revealed subjective pain in the leg, and a positive straight leg raise. (Tr. 311). Therefore, after diagnosing her with back pain, the doctor prescribed Elavil, Vicodin, and heat therapy. He also gave her injections of Stadol and Phenergan. (Tr. 311).

We believe that remand is necessary to allow the ALJ to reevaluate his RFC assessment. On remand, the ALJ is directed to reconsider the medical evidence. In so doing, he should pay special attention to plaintiff's back impairments and the non-exertional limitations that would result from such a condition.

After a thorough review of the evidence, we also note that the record does not contain a physical or mental RFC assessment completed by plaintiff's treating physicians. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). We note, that the opinion of a consulting physician who examined the plaintiff once, or not at all, does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). As this plaintiff carries diagnoses of major depression, post-traumatic stress disorder, OCD, anxiety, hypertrophic spurring at the C3-4 and C4-5, degenerative changes of the thoracic spine, and disc space narrowing and lipping at the L3-4 and L4-5, we believe that the case should be remanded to allow the ALJ to obtain mental and physical

AO72A
(Rev. 8/82)

RFC assessments from plaintiff's treating sources. (Tr. 113, 117, 120, 127, 186, 188).

Accordingly, on remand, the ALJ is directed to address interrogatories to the physicians and psychologists who have evaluated and/or treated plaintiff, asking them to review plaintiff's medical records; complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, provide the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

The ALJ also failed to consider evidence indicating that plaintiff failed to seek more treatment and fill prescription medications, due to financial hardship. (Tr. 167, 168, 324). While it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a prescribed course of treatment, or to seek medical attention, such failure may be excused by a claimant's lack of funds. *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984); *Jackson v. Bowen*, 866 F. 2d 274, 275 (8th Cir. 1989). "Although it is permissible in assessing the severity of pain for an ALJ to consider a claimant's medical treatment and medications, the ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of a lack of finances." *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) (citing *Tome v. Schweiker*, 724 F.2d at 714). Economic justifications for lack of treatment can be relevant to a disability determination. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992). Therefore, on remand, the ALJ is directed to further develop the record concerning plaintiff's financial ability to obtain treatment and medication.

7

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this <u>13th</u> day of March 2006.

<u>/s/ Bobby E. Shepherd</u>
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)